## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SUVARCHALA DEVI CHIRAVURI,

     Plaintiff,                              Case No.

v.                                         Hon.

UNIVERSITY OF MICHIGAN, UNIVERSITY
OF MICHIGAN BOARD OF REGENTS, and
GEORGE MASHOUR, University of Michigan
Chair of Anesthesiology, and LORI RIEGGER,
Division Chief of Pediatric Anesthesiology,
*sued in their personal and official capacities*,

     Defendants.

_____

David A. Nacht (P47034)
Fabiola A. Galguera (P84212)
Grace C. Cretcher
NACHTLAW, P.C.
*Attorneys for Plaintiff*
501 Avis Drive, Suite 3
Ann Arbor, MI 48108
(734) 663-7550
dnacht@nachtlaw.com
fgalguera@nachtlaw.com
gcretcher@nachtlaw.com

_____

## <u>COMPLAINT AND JURY DEMAND</u>

     NOW COMES Plaintiff SUVARCHALA DEVI CHIRAVURI ("Plaintiff"),

by and through her attorneys, NACHTLAW, P.C., and hereby alleges as follows:

### INTRODUCTION

     1.    Plaintiff's claims arise out of the discriminatory and retaliatory

treatment she faced while employed as a Pediatric Cardiac Anesthesiologist at Michigan Medicine, and the wholly inadequate process she was afforded prior to being deprived of her constitutionally protected liberty and property interests in her work.

2.     Plaintiff is an experienced, knowledgeable physician with over 30 years of medical training.

3.     The daughter of two immigrants from India, Plaintiff has worked tirelessly not only to provide excellent medical care, but to help educate future generations of doctors by publishing multiple papers and eventually joining the University of Michigan (hereinafter referred to as "U-M") staff upon completion of her fellowship.

4.     Despite Plaintiff's impressive track record at U-M, Defendants targeted Plaintiff as the only woman of color to hold the position of Associate Professor in the anesthesiology department and summarily declined to renew her academic contract without prior due process.

5.     Plaintiff brings this action against Defendants for violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983, multiple violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623 (hereinafter referred to as the "ADEA").

## PARTIES, JURISDICTION, AND VENUE

6.      Plaintiff Suvarchala Devi Chiravuri is a woman of Indian origin, a resident of Ann Arbor, Michigan, and a Clinical Associate Professor at U-M's Department of Anesthesiology.

7.      Defendant University of Michigan is a publicly funded and state-operated university located in Ann Arbor, Michigan. U-M receives state and federal funding for the provision of higher education.

8.      Defendant University of Michigan Board of Regents is the publicly elected governing body of U-M.

9.      Defendant George Mashour is the U-M Chair of Anesthesiology. He is sued in his personal and official capacities.

10.     Defendant Lori Riegger is the U-M Division Chief of Pediatric Anesthesiology. She is sued in her personal and official capacities.

11.     Plaintiff filed notice of her intention to bring claims against Defendants based on the events described herein with the Michigan Court of Claims on November 7, 2023.

12.     Plaintiff was issued a Right to Sue Letter from the U.S. Equal Employment Opportunity Commission on January 8, 2024.

13.     The events underlying this Complaint occurred in Ann Arbor, Michigan within the Eastern District of Michigan.

3

14.     This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

## FACTUAL ALLEGATIONS

### Plaintiff's Background

15.     Plaintiff is 53 years old and was born to two immigrant Indians in Chicago, Illinois.

16.     Plaintiff excelled in school and was admitted to the Honors Program in Medical Education at Northwestern University, a combined undergraduate and medical school program.

17.     Plaintiff received her undergraduate degree in engineering in 1990 at the age of 20 and her medical degree in 1994 at the age of 24.

18.     Plaintiff then began a residency in general surgery at Northwestern University.

19.     During her residency, she developed a strong interest in Pediatric Anesthesiology, and chose to switch to anesthesiology when she became pregnant with her first child.

20.     Plaintiff completed her residency in anesthesiology at Illinois Masonic Medical Center, where she was Chief Resident.

### Plaintiff's Tenure at U-M

21.     After her residency, Plaintiff moved to Ann Arbor in 2000 to begin her

4

fellowship at U-M in Pediatric Anesthesiology.

22.    Plaintiff subsequently published several papers as she worked towards leadership.

23.    Plaintiff was appointed Associate Program Director in 2007, after which she was promoted to the position of Pediatric Anesthesiology Fellowship Program Director in 2012, a position she has held successfully for over ten years.

24.    During her time in this position, Plaintiff trained almost 100 pediatric anesthesiology fellows, developed the educational curriculum, and increased the number of fellows in the program per year.

25.    Plaintiff also developed the protocols for the Fetal Anesthesia Program and was its first director.

26.    Throughout her career at U-M, Plaintiff has received exclusively positive performance reviews while working closely with obstetricians, pediatric surgeons, cardiologists, nurses, and many others to care for Michigan Medicine's youngest and sickest patients.

27.    In 2020, Plaintiff was promoted to Associate Professor after working with her department leadership for the prior two years to earn this promotion on the educational track.

28.    In her section of 38 pediatric anesthesiologists, Plaintiff is one of only two women – and the only woman of color – to hold this Associate Professor title.

29.     Plaintiff was also a Clinical Director of the Operating Rooms, another leadership position at Michigan Medicine.

### Discrimination and Retaliation Against Plaintiff at U-M

30.     Dr. George Mashour took over as Chair of the Department of Anesthesiology in 2019, marking the beginning of the issues Plaintiff faced in her work at U-M.

31.     These issues accelerated when Dr. Lori Riegger became Division Chief of Pediatric Anesthesiology at the beginning of 2022.

32.     Dr. Riegger has a long history of treating Plaintiff condescendingly and dismissively, once even remarking, "I can't put my finger on it, but you are lazy," simply because Plaintiff disagreed with her on the timing of a task.

33.     The only event of note in Plaintiff's U-M employment record occurred in March of 2022, when she placed an IV and administered a non-controlled pain medication to a younger white faculty member who needed to undergo an MRI while experiencing significant pain.

34.     Plaintiff was assigned to work in the MRI suite at the time, and the younger white faculty member had an order for an MRI.

35.     Although Plaintiff initially suggested that this faculty member go to the emergency room, as the COVID pandemic was in full swing, this would have meant a prolonged wait in serious pain.

6

36.     There is no policy at U-M against starting an IV on a colleague in need of medical attention.

37.     In fact, the same younger white faculty member had previously had an IV started by a male colleague at the encouragement of the prior Division Chief, Dr. Paul Reynolds.

38.     Moreover, the same younger white faculty member faced no consequences whatsoever as a result of being party to the exact same incident as Plaintiff.

39.     After an investigation and recommendations by the Executive Committee on Clinical Affairs ("ECCA") and the Medical Staff Quality Committee ("MSQC"), however, the U-M Health System Board approved ECCA's request that the matter be resolved by issuing Plaintiff a letter of reprimand in October of 2022, consistent with the process provided for in the U-M Medical Staff Bylaws at Article VIII.

40.     The decision to treat this situation as an incident appropriate for documentation in Plaintiff's personnel file was itself inappropriate and discriminatory, as multiple other faculty members have started IVs on one another absent medical orders for such administration during Plaintiff's time at U-M without being similarly written up.

41.    The letter of reprimand states that it does not "impact [Plaintiff's] privileges."

42.    Dr. Marie Lozon, Chief of Staff, told Plaintiff that the letter should not affect her clinical appointment.

43.    Despite this, on November 8, 2022, Plaintiff was given a notice of non-reappointment by Dr. Mashour, who stated that she "no longer represented Michigan Medicine values" and refused to provide her with any additional information.

44.    Plaintiff then asked to meet with Dr. Riegger, who told her that her contract was not being renewed because of the IV incident, because she had forwarded an email from a medical student to some of her colleagues seeking advice about their learning tools, which Dr. Riegger alleged was a FERPA violation, and because she did not feel Plaintiff said hello enough to her in the halls.

45.    Plaintiff's ombudswoman, Dr. Danielle Turgeon, subsequently met with Dr. Mashour, Dr. Riegger, and Dr. Paul Reynolds, whom Dr. Riegger had replaced as Division Chief.

46.    Dr. Turgeon was told that Plaintiff is "dismissive of leadership" and "argumentative," and that she doesn't "get along with CRNAs and nurses."

47.    These claims are completely undocumented, have never been addressed with Plaintiff, and are categorically unfounded.

48.     The Michigan Medicine Bylaws require that such incidents or issues be discussed with the relevant employee in the timely manner.

49.     Dr. Turgeon was further told that when Dr. Riegger was to be appointed Division Chief, Dr. Mashour had asked Dr. Reynolds if there was anyone who would be opposed to this, and Dr. Reynolds claimed that Plaintiff would be – suggesting that she was targeted for non-reappointment as a result.

50.     Despite the procedures and requirements laid out in the applicable Bylaws and other relevant policies, the decision not to renew Plaintiff's contract was undertaken summarily, with little to no due process whatsoever.

51.     Plaintiff was not offered "collegial intervention," a performance improvement plan ("PIP"), or the opportunity to respond to – or even be informed of – the reasons for the termination of her longstanding relationship with U-M.

52.     As a result of her non-reappointment, Plaintiff also lost her positions as Pediatric Anesthesiology Fellowship Program Director and Clinical Director of the Operating Rooms.

53.     These events took place in the context of Plaintiff's 22 years of dedicated work, her excellent record, and the fact that she had just 2 years left before eligibility for retirement benefits and remained tied to the University due to her husband's faculty position.

54.    In response, Plaintiff filed a faculty grievance contesting her non-reappointment on January 31, 2023.

55.    After a hearing on June 20, 2023, the Grievance Hearing Board that was convened to consider Plaintiff's grievance issued a final decision in her favor on September 7, 2023, finding that her non-reappointment was arbitrary and capricious.

56.    Despite this, Plaintiff is now subject to an unmerited PIP, exacerbating the embarrassment and shame of being singled out for termination as the only woman of color Associate Professor in anesthesiology.

57.    No feedback or documentation was ever provided to Plaintiff, nor did any "collegial intervention" occur, prior to the initiation of the PIP.

58.    Plaintiff's non-reappointment resulted in a substantial loss of pay and administrative time.

59.    Plaintiff's salary is made up of 2 components: one paid by the medical school for her teaching role and a departmental supplement based on her clinical work.

60.    Defendant Mashour's choice to contest the Grievance Hearing Board's initial decision in Plaintiff's favor meant that her clinical credentials, which were tied to her non-renewal, expired on August 7, 2023.

10

61.    Although Plaintiff's clinical credentials normally come up for renewal every two years, the proceedings against Plaintiff caused hers to expire in just 9 months.

62.    As a result, Plaintiff suffered a substantial loss of clinical pay and her ability to qualify for a clinical productivity bonus.

63.    Plaintiff has not been restored to her positions as Pediatric Anesthesiology Fellowship Program Director or Clinical Director of the Operating Rooms.

64.    Plaintiff has been replaced in these leadership positions by less experienced, male, and/or white colleagues.

65.    In addition to the prestige associated with a leadership role, the loss of Plaintiff's Program Director Position has resulted in the loss of annual supplement funds, bonus monies, and one day a week in non-clinical administrative time.

66.    Plaintiff also lost her office and is now assigned to a 4-person shared office in close proximity to the very CRNAs who participated in the effort to have her fired.

67.    All other Clinical Associate Professors are assigned to 2-person offices.

68.     Finally, in addition to the prestige associated with a leadership role, the loss of Plaintiff's position as a Director of the OR also resulted in the loss of additional bonus monies.

**COUNT I**
**Violation of Due Process Clause of the**
**Fourteenth Amendment to the U.S. Constitution**
**42 U.S.C. § 1983**
*(against the individual defendants for money damages in their personal capacities*
*and declaratory and injunctive relief in their official capacities)*

69.     Plaintiff incorporates the preceding allegations as if fully restated herein.

70.     The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution provides that "no state shall… deprive any person of life, liberty, or property, without due process of law."

71.     42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by person acting under the color of law.

72.     Plaintiff had a constitutionally protected interest in her faculty and hospital leadership positions because of the importance of these positions to her standing in the academic community, *see Smock v. Bd. Of Regents of Univ. of Michigan*, 353 F. Supp. 3d 651, 657 (E.D. Mich. 2018) (citing *Sharp v. Lindsey*, 285 F.3d 479, 489 (6th Cir. 2002)); *see also Gunasekera v. Irwin*, 551 F.3d 461, 471 (6th Cir. 2009).

73.     Because the reputational stigma Defendants fostered against Plaintiff is related to her demotion, she also had a constitutionally protected liberty interest in

her good name and reputation, *see Murtha v. Rossford Exempted Vill. Sch.*, No. 21-3449, 2021 WL 4950238, at *5 (6th Cir. Oct. 25, 2021).

74.   It is "well-settled" for purposes of § 1983 that Plaintiff's constitutionally protected liberty interest in her "reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the Fourteenth Amendment." *Gallow v. Pittis*, No. 2:17-CV-1007, 2019 WL 4192717, at *4 (S.D. Ohio, Sept. 4, 2019) (citing *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002)).

75.   Although Defendant had provided Plaintiff with the opportunity to go before the Grievance Hearing Board, when these proceedings resulted in a finding in Plaintiff's favor, Defendants deprived her of the above-listed property and liberty interests anyways, without any procedural basis whatsoever.

76.   Plaintiff was entitled to due process of law prior to deprivation of her property interests.

77.   Defendants' arbitrary and capricious decision to deprive Plaintiff of these interests without adequate process of law, and, in fact, despite the faculty grievance hearing in her favor, represents a due process violation.

78.   Defendants acted under the color of state law in making the administrative decision to deprive Plaintiff's constitutionally protected property interests.

79.     A reasonable person or public official should have known that it is a violation of a person's clearly established constitutional rights to deprive her of meaningful due process.

80.     Accordingly, Defendants' actions outlined *supra* violated Plaintiff's clearly established constitutional rights, of which any reasonable person in their position would have known; they are therefore not entitled to qualified immunity.

81.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, removal from her positions at U-M; loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation, and will continue to so suffer in the future.

82.     Plaintiff is entitled to punitive damages because Defendants engaged in the above-described conduct with malicious and evil intent, in callous disregard of Plaintiff's federally protected rights.

**COUNT II**
**Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e *et seq*.**
*(against Defendants University of Michigan and the University of Michigan Board of Regents)*

83.     Plaintiff incorporates the preceding allegations as if fully restated herein.

14

84.    At all relevant times, Defendants employed greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b) and (f).

85.    Title VII prohibits discrimination in employment on the basis of race.

86.    Plaintiff was qualified for her positions as Anesthesiology Fellowship Program Director and Clinical Director of the Operating Rooms.

87.    Defendants subjected Plaintiff to intentional discrimination based on her race by arbitrarily and capriciously declining to renew her appointment to the clinical faculty and removing her from her program leadership position without adequate process, while also treating white coworkers more favorably.

88.    Bias against women of color was a motivating factor behind Defendants' decision not to reappoint Plaintiff to the faculty.

89.    Defendants applied their policies and procedures in a manner that discriminated against Plaintiff on the basis of race, causing her serious and unjustified damage.

90.    Based on the foregoing, Plaintiff was subjected to biased, prejudiced, and unfair treatment in violation of Title VII.

91.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, removal from her positions at U-M; loss of income; loss of career

15

opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation, and will continue to so suffer in the future.

## COUNT III
### National Origin Discrimination in Violation of Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e *et seq.*
*(against Defendants University of Michigan and the University of Michigan Board of Regents)*

92.     Plaintiff incorporates the preceding allegations as if fully restated herein.

93.     At all relevant times, Defendants employed greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b) and (f).

94.     Title VII prohibits discrimination in employment on the basis of national origin.

95.     Plaintiff was qualified for her positions as Anesthesiology Fellowship Program Director and Clinical Director of the Operating Rooms.

96.     Defendants subjected Plaintiff to intentional discrimination based on her national origin by arbitrarily and capriciously declining to renew her appointment to the clinical faculty and removing her from her program leadership

16

position without adequate process, while also treating white American coworkers more favorably.

97.     Bias against Indian women was a motivating factor behind Defendants' decision not to reappoint Plaintiff to the faculty.

98.     Defendants applied their policies and procedures in a manner that discriminated against Plaintiff on the basis of national origin, causing her serious and unjustified damage.

99.     Based on the foregoing, Plaintiff was subjected to biased, prejudiced, and unfair treatment in violation of Title VII.

100.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, removal from her positions at U-M; loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation, and will continue to so suffer in the future.

**COUNT IV**
**Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e *et seq*.**
*(against Defendants University of Michigan and the University of Michigan Board of Regents)*

101.   Plaintiff incorporates the preceding allegations as if fully restated herein.

102.   At all relevant times, Defendants employed greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b) and (f).

103.   Title VII prohibits discrimination in employment on the basis of sex.

104.   Plaintiff was qualified for her positions as Anesthesiology Fellowship Program Director and Clinical Director of the Operating Rooms.

105.   Defendants subjected Plaintiff to intentional discrimination based on her race, sex, national origin, and age by arbitrarily and capriciously declining to renew her appointment to the clinical faculty and removing her from her program leadership position without adequate process, while also treating male coworkers more favorably.

106.   Bias against women of color was a motivating factor behind Defendants' decision not to reappoint Plaintiff to the faculty.

107.   Defendants applied their policies and procedures in a manner that discriminated against Plaintiff on the basis of sex, causing her serious and unjustified damage.

108.   Based on the foregoing, Plaintiff was subjected to biased, prejudiced, and unfair treatment in violation of Title VII.

109.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not

18

limited to, removal from her positions at U-M; loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation, and will continue to so suffer in the future.

**COUNT V**
**Age Discrimination in Violation of the**
**Age Discrimination in Employment Act, 29 U.S.C. § 623**
*(against Defendants University of Michigan and the University of Michigan Board of Regents)*

110.   Plaintiff incorporates the preceding allegations as if fully restated herein.

111.   At all relevant times, Defendants employed greater than 20 employees and Plaintiff was an employee covered by and within the meaning of the ADEA.

112.   The ADEA prohibits discrimination in employment on the basis of age.

113.   Plaintiff is a member of a protected group because of her age: fifty-three (53) years old at the time of Defendants' discriminatory conduct.

114.   Plaintiff was qualified for her positions as Anesthesiology Fellowship Program Director and Clinical Director of the Operating Rooms.

115.   Defendants subjected Plaintiff to intentional discrimination based on her age by arbitrarily and capriciously declining to renew her appointment to the clinical faculty and removing her from her program leadership position without adequate process, while also treating younger coworkers more favorably.

19

116.   Bias against older women was a motivating factor behind Defendants' decision not to reappoint Plaintiff to the faculty.

117.   Defendants applied their policies and procedures in a manner that discriminated against Plaintiff on the basis of age, causing her serious and unjustified damage.

118.   Based on the foregoing, Plaintiff was subjected to biased, prejudiced, and unfair treatment in violation of the ADEA.

119.   As a further direct and proximate result of Defendants' violation of the ADEA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## RELIEF REQUESTED

For all the foregoing reasons, Plaintiff demands judgment against Defendants as follows:

a.  A declaration that the practices and actions of Defendants are unlawful employment practices in violation of the U.S. Constitution, Title VII, and/or the ADEA;

b.  Compensatory damages in whatever amount she is found to be entitled;

c.  Exemplary damages in whatever amount she is found to be entitled;

20

d. Punitive damages in whatever amount she is found to be entitled pursuant to 42 U.S.C. § 1983;

e. Interest, costs, reasonable attorney fees, and expert witness fees;

f. Equitable relief, including reappointment to her faculty leadership positions and an injunction prohibiting any further acts of wrongdoing against her; and

g. Whatever other relief this Court finds appropriate.

Respectfully Submitted,

**NACHTLAW, P.C.**

*/s/ David A. Nacht*
David A. Nacht (P47034)
Attorneys for Plaintiff
501 Avis Dr, Ste. 3
Ann Arbor, MI 48108
(734) 663-7550

Dated: March 8, 2024

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SUVARCHALA DEVI CHIRAVURI,

    Plaintiff,                                   Case No.

v.                                           Hon.

UNIVERSITY OF MICHIGAN, UNIVERSITY
OF MICHIGAN BOARD OF REGENTS, and
GEORGE MASHOUR, University of Michigan
Chair of Anesthesiology, and LORI RIEGGER,
Service Chief of Pediatric Anesthesiology,
*sued in their personal and official capacities*,

    Defendants.

---

David A. Nacht (P47034)
Fabiola A. Galguera (P84212)
Grace C. Cretcher
NACHTLAW, P.C.
*Attorneys for Plaintiff*
501 Avis Drive, Suite 3
Ann Arbor, MI 48108
(734) 663-7550
dnacht@nachtlaw.com
fgalguera@nachtlaw.com
Gcretcer@nachtlaw.com

---

## **JURY DEMAND**

    NOW COMES Plaintiff SUVARCHALA DEVI CHIRAVURI, by and through her attorneys, NACHTLAW, P.C., and hereby demands a trial by jury in the above-captioned matter for all issues so triable.

                             Respectfully Submitted,

NACHTLAW, P.C.

*/s/ David A. Nacht*
David A. Nacht (P47034)
Attorneys for Plaintiff
501 Avis Dr, Ste. 3
Ann Arbor, MI 48108
(734) 663-7550

Dated: March 8, 2024